VICTOR RADIO CORPORATION, Plaintiff, *v.* RADIO-VICTOR CORPORATION OF AMERICA, Defendant.

Supreme Court, New York County, May 20, 1931.

*Lind & Marks* [*Max Shlivek* of counsel], for the plaintiff.

*O'Brien, Boardman, Conboy, Memhard & Early* [*Martin Conboy* of counsel], for the defendant.

COTILLO, J. Plaintiff corporation was organized on the 10th day of April, 1922, under the laws of the State of New York, with an authorized capital of $10,000, consisting of 100 shares of common stock at a par value of $100 each. The stockholders of record were Alexander Lyons, Albert Lyons and one Edwin E. Schloss. The Lyons were insurance adjusters and Schloss was an officer in a furniture concern. The corporation when organized occupied quarters with Schloss Brothers, a furniture concern located at 801 East One Hundred and Thirty-fifth street, New York city. For a short while the plaintiff manufactured and sold radio receiving sets.

When the company first commenced business it sold its radio sets under the name of "Vict-Ra-Phone." In 1923 it registered this name "Vict-Ra-Phone" in the United States Patent Office, claiming use of it as a trade-mark since May 1, 1922. It then did some advertising under the name of "Victor Senior" and "Victor Junior." In connection with its advertising the plaintiff adopted a device consisting of a large circle within an upper arc on which ran the slogan "The World's Voice." Inclosed in the large circle was a representation of the western hemisphere marked by lines of latitude and longitude. The word "Victor" appears above this and the word "Corporation" below. A band cuts the middle of the hemisphere and has inscribed the word "Radio" in it, and above and around the hemisphere are conventional symbols representing radio broadcasting.

In the beginning of May, 1923, the plaintiff ceased to do business and the premises which had been occupied by it were offered for rent and from the year 1924 to date the corporation has done no business and made no sales, disposing of its assets for the purpose of relieving itself of the franchise tax. It filed the formal certificate prescribed by the Tax Department showing that all its assets had been disposed of by sale and that the corporation would not resume operations under its charter. This certificate was dated October 23, 1924. Since then the corporation has done no business and has no place of business except a nominal office with Alexander Lyons, its president, at the office of Alexander Lyons, at No. 68 William street, New York city, for the purpose of collecting any outstanding accounts, and that prior to the incorporation of the defendant, the plaintiff had no name denoting a radio business on the door of the office at 68 William street, nor was its name displayed on the directory board in that building, nor did it display any radio merchandise.

Since the commencement of this action the name "Victor Radio Corporation" was placed on the lower left-hand door of the room occupied by Alexander Lyons. From 1924 plaintiff was not listed in any city directory, copartnership directory, nor in the telephone directory; it had no contract with the telephone company and seems to have been generally unknown in the radio business. It paid no franchise taxes to the State, but in July, 1929, immediately before commencing the present suit, it paid the back taxes which had accrued. For all intents and purposes the corporation had ceased doing business.

The Victor Talking Machine Company was organized in 1901 under the laws of the State of New Jersey with the expressed objects of manufacturing and dealing in all kinds of machines,

instruments and appliances for reproducing, transmitting and uttering sounds and obtained a certificate to do business in the State of New York in the year 1909. In March, 1929, the Radio Corporation of America acquired practically all the stock of the Victor Talking Machine Company and thereafter organized the defendant corporation in April, 1929, under the laws of the State of Maryland, in order to act as the exclusive sales agent of the Victor Talking Machine Company, in connection with the sale of its products. The defendant corporation qualified on May 27, 1929, to do business in the State of New York. The name which was given to the defendant is a combination of the distinctive elements of the names of the two parent corporations. Ever since the incorporation of the Victor Talking Machine Company it manufactured and sold, under the trade name of " Victor," talking machines, talking machine records and other musical and sound reproducing devices. It sold its products under a trade-mark which consisted of the likeness of a small dog sitting in front of a talking machine and apparently listening to the sounds coming therefrom. Under such picture is the phrase " His Master's Voice." This trade-mark and device became one of great value in association with the Victor machine products and was used upon its products and in connection with its advertising. The Victor Talking Machine Company commenced experimenting with radios and studying their commercial possibilities in connection with the talking machines in 1922, and thereafter manufactured and sold some radios known as " Victor " radios. The Radio Corporation of America after its organization in 1919 was engaged in the transmission of radio communication and the manufacture and sale of radio sets. It advertised widely and has been known as one of the leading organizations in the radio field. Since 1919 it has used as a trade-mark the representation of a hemisphere showing on the upper half the lines of latitude and longitude and a portion of the continent of North America, while across the lower half the words " World Wide Wireless " appear.

This action is brought by the plaintiff to enjoin the defendant from manufacturing and selling radios or like products within the State of New York under the name of " Victor Radio " or using the said name within the State of New York in connection with the business, and from using the name or style similar to the Victor Radio Corporation. The case was submitted pursuant to an agreement at the trial upon the affidavits filed on the application for a preliminary injunction and the statements of fact made by counsel.

The plaintiff cites numerous Federal cases that establish " That one first to appropriate a trade-mark or trade name is entitled,

by priority, to the exclusive use of that name if not descriptive or geographical in character." With this statement I am in complete accord, and applying the above elementary principle of law to the facts in this case, I find that the Victor Talking Machine Company, whose rights were concededly acquired by the defendant, appropriated the trade-mark " Victor " more than twenty-one years before the plaintiff came into being, used that name in connection with its products for all time, and made the name valuable.

Plaintiff further questions the right of the Victor Talking Machine Company to the exclusive right of the name " Victor " as applied to radios. The evidence before me is uncontradicted that the defendant's predecessors used the trade-mark " Victor " for over twenty years before the plaintiff was organized and that the Victor Talking Machine Company had been authorized to do business in this State for at least three years before the plaintiff was organized.

" Words in common use may be adopted if, at the time of adoption, they were not used to designate the same or similar articles of production." (Nims, Unfair Competition and Trade-Marks [3d ed.], p. 735, note).

A number of authorities submitted by the defendant clearly illustrate that the courts have extended the protection of a trade name to cases where there was little or no similarity or kinship in respective products.

In *Yale Electric Corporation* v. *Robertson* (26 F. [2d] 972) the Circuit Court of Appeals of this circuit, by LEARNED HAND, C. J., sustained an injunction restraining the plaintiff's use of the word " Yale " upon flashlights and batteries. The defendant was the proprietor of the trade-mark " Yale," used in connection with locks, and did not manufacture flashlights or batteries. The court, in that case, said: " The law of unfair trade comes down very nearly to this — as judges have repeated again and again — that one merchant shall not divert customers from another by representing what he sells as emanating from the second. This has been, and perhaps even more now is, the whole Law and the Prophets on the subject, though it assumes many guises. Therefore it was at first a debatable point whether a merchant's good will, indicated by his mark, could extend beyond such goods as he sold. How could he lose bargains which he had no means to fill? What harm did it do a chewing-gum maker to have an iron-monger use his trade-mark? The law often ignores the nicer sensibilities.

" However, it has of recent years been recognized that a merchant may have a sufficient economic interest in the use of his mark outside the field of his own exploitation to justify interposition by a court. His mark is his authentic seal; by it he vouches for the

goods which bear it; it carries his name for good or ill. If another uses it, he borrows the owner's reputation, whose quality no longer lies within his own control. This is an injury, even though the borrower does not tarnish it, or divert any sales by its use; for a reputation, like a face, is the symbol of its possessor and creator, and another can use it only as a mask. And so it has come to be recognized that, unless the borrower's use is so foreign to the owner's as to insure against any identification of the two, it is unlawful."

In the instant case, radio sets are so closely akin to talking machines generally and to " machines, instruments and appliances for reproducing, transmitting and uttering sound," for the purpose of manufacturing and dealing in which the Victor Talking Machine Company was incorporated, that there can be no doubt but that the Victor Talking Machine Company and the defendant that claims under it, had the exclusive right to use the name " Victor " in connection with radio apparatus.

There is no necessity to discuss all the rest of the points raised by the briefs due to the fact that the court is more than convinced that the facts in the present case establish that the plaintiff adopted the name of " Victor " for use on the few radio sets that it manufactured for the purpose of leading the public to believe that its output was in fact the product of the Victor Talking Machine Company, and for the plaintiff to pretend that the defendant is seeking to avail itself of any good will established by the plaintiff is an absolute absurdity. Confusion between the companies and their respective products could only benefit the plaintiff and could have no effect on the defendant except to cause it damage. It is my opinion that the use of the name " Victor " in connection with talking machines established the right of the Victor Talking Machine Company to the exclusive use of that name in connection with radio apparatus, and that the incorporation of the plaintiff under that name conferred upon it no right to use that name, and that plaintiff has been guilty of unfair competition.

I am unable to see from a careful consideration of the affidavits, statements and the short examination of the president of the plaintiff corporation, that the plaintiff can succeed in this action. The court is of the opinion that the plaintiff adopted its name in order to procure unfairly the benefit of the national reputation of the Victor Talking Machine Company, and that the resuscitation of the defunct plaintiff corporation has been attempted after the consolidation of the Victor Talking Machine Corporation and the Radio Corporation of America, to secure a settlement of the alleged grievance by the sale of its name to the defendant. This no court

of equity would permit. A reputable concern which has commercially built up a reputation through the quality of its product and advertising should be protected by our courts to the fullest extent from being embarrassed or mulcted by unscrupulous litigants.

Judgment is directed in favor of the defendant. Submit proposed findings of fact and conclusions of law and proposed judgment.